IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CODY S. HOWARD                                                                                    PLAINTIFF
#79081

V.                              Case No. 4:23-CV-00192-LPR-BBM

BRUNER, Officer,
Pulaski County Jail                                                                                DEFENDANT

## **RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On March 13, 2023, Plaintiff Cody S. Howard ("Howard"), an inmate at the Pulaski County Regional Detention Facility ("PCRDF"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 3). After the Court screened the Complaint[1] in accordance with the Prison Litigation Reform Act ("PLRA"),

---

[1] Howard filed a substantially similar Amended Complaint on March 14, 2023, adding a request for the body camera footage. (Doc. 11).

Howard was allowed to proceed with an excessive force claim against Defendant Bruner ("Bruner"), an officer at PCRDF, in his individual and official capacities. (Doc. 18 at 2).

On November 29, 2023, Bruner filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts, arguing that Howard's Complaint should be dismissed on the merits. (Docs. 36–38). The Court entered an Order on November 30, 2023, informing Howard that he had a right to file a response and that, in doing so, he "must separately file a "Statement of Disputed Facts" containing a "short and concise statement of material facts as to which he contends a genuine dispute exists to be tried." (Doc. 40 at 2) (citing LOCAL RULE 56.1).

On December 7, 2023, Howard filed a document titled "Objection," which was docketed by the Clerk of Court as a Response to Bruner's Motion for Summary Judgment. (Doc. 41). Howard later filed a document titled "Motion to Subpoena," which was denied as moot and, at the direction of the Court, filed as a Supplemental Response to Bruner's Motion for Summary Judgment. (Doc. 42; Doc. 43 at 1–2). Howard did not file a separate Statement of Disputed Facts, thus all facts in Bruner's Statement of Facts are deemed admitted. *See* LOCAL RULE 56.1(b)–(c). The time for a reply brief has expired. LOCAL RULE 5.5(c). Thus, Bruner's Motion for Summary Judgment is joined and ready for disposition.

On June 20, 2024, Howard filed a Motion for Declaratory and Injunctive Relief. (Doc. 45). On June 26, 2024, Bruner filed a Response to that Motion, and on July 9, 2024, Howard filed a Reply. Thus, Howard's Motion for Declaratory Judgment and Injunctive Relief is also joined and ready for disposition.

For the reasons set forth below, it is recommended that Bruner's Motion for Summary Judgment (Doc. 36) be granted and Howard's Motion for Declaratory and Injunctive Relief (Doc. 45) be denied as moot.

## II.   FACTUAL BACKGROUND

In his Complaint, Howard alleges that, around November of 2022, Officer Bruner sprayed him—point blank—with a can of OC Spray while in his cell. (Doc. 3 at 4). According to Howard, he was trying to explain to Bruner that "he could not use the OC Spray without proper cause." *Id.* Howard alleges that this was a violation of his constitutional rights and, as previously stated, is proceeding with an excessive force claim against Bruner. *Id.*

Video from Bruner's body camera captured the November 2022 interaction between Bruner and Howard. (Doc. 38-7, Video 1).[2] At the beginning of the video, the camera's audio is muted; Bruner opens the door to Howard's cell, and a fellow inmate hands Howard a broom. *Id.* at 0:00:14–0:00:19. While the audio is still muted, Howard stands in the doorway of his cell talking to Bruner, alternating between moving his hands, sweeping, and occasionally shaking his head. *Id.* at 0:00:19–0:01:00.

When the audio turns on, Howard states, "I don't give a damn about none of that shit."[3] *Id.* at 0:10:10–01:00:02. Bruner, standing outside of Howard's cell, says, "Me

---

[2] Doc. 38-7 includes two videos. The video titled "Axon_Body_3_Video_2022-11-05_2009_X60A23826" ("Video 1") is from Bruner's body camera and details the incident in the cell, while the video titled "Axon_Body_3_Video_2022-11-05_2010_X60A29635" ("Video 2") is from another officer who responded after Howard was sprayed and details the medical care Howard received.

[3] After the audio is turned on, Howard continues to intermittently talk and sweep. (Doc. 38-7, Video 1 at 00:01:00–00:01:31).

3

either." *Id.* at 01:00:02. Howard replies, "You know what I'm saying? I'm talking about some motherfucking state-issued tissue that you refuse to give us." *Id.* at 00:01:04–00:01:08. Bruner responds, "When I get a chance." *Id.* at 00:01:07. Howard replies, "It don't seem like you trying to get a chance." *Id.* at 00:01:08–00:01:09. Again, Bruner responds, "When I get a chance." *Id.* at 00:01:09. Howard asks, "It's like you inten-what's your name, man?" *Id.* at 00:01:11. Bruner responds, "Dominic Bruner, BSN 5146. You can write the Grievance." *Id.* at 00:01:11–00:01:15. Howard replies, "I'm gonna fire your ass up, you don't even know." *Id.* at 00:01:15–00:01:17. Bruner responds, "That's fine." *Id.* at 00:01:17–00:01:18. Howard replies, "And I got a 1983. Yeah, I'm talking about federal court, bitch. I don't [unintelligible] you." *Id.* at 00:01:18–00:01:23. Bruner responds, "Good job. Okay, thank you. Because at the end of the day, still not getting no tissue till I get a chance, till I get around to it." *Id.* at 00:01:23–00:01:30. Howard replies, "Shit." *Id.* at 00:01:30-00:01-31.

At that point, Bruner moves into Howard's cell and states, "Actually, hand me this broom, because y'all be playing." *Id.* at 00:01:31-00:01:33. Bruner approaches Howard and takes the broom from his hand. *Id.* at 00:01:33–00:01:36. Howard states, "You said what? Don't try to get tough with me, bitch." *Id.* at 00:01:35–00:01:37. Howard then takes off his face mask while standing directly in front of Bruner. *Id.* at 00:01:38. Bruner asks Howard, "What you trying to do?" *Id.* at 00:01:39. Howard then asks, "I'm just saying, what you trying to do?" 00:01:39–00:01:41. As the confrontation escalates, OC spray is visible in Bruner's hand. *Id.* at 00:01:39–00:01:40. Bruner points to Howard's rack and says, "Get on your rack." *Id.* at 00:01:41. Howard replies, "Real shit." *Id.* at 00:01:41–

4

00:01:42. Bruner asks again for Howard to "Get on [his] rack." *Id.* at 00:01:42. Howard again says, "Real shit." *Id.* at 00:01:42–00:01:43. Bruner says a third time, "Get on your rack." *Id.* at 00:01:43–00:01:44. Howard says, "What the fuck wrong with you, man?" *Id.* at 00:01:44–00:01:45. A fourth time, Bruner says, "Sit down on your rack." *Id.* at 00:01:46. Howard says, "Hey, I can sue you, you [unintelligible]" while raising his hand above his waist and pointing at Bruner. *Id.* at 00:01:46. Bruner then takes a step back and sprays OC spray toward Howard's face. *Id.* at 00:01:46. Howard reacts to the spray and says, "Ok, I got [unintelligible]." *Id.* at 00:01:46–00:01:53. Bruner immediately orders a Code Blue via walkie-talkie. *Id.* at 00:01:56. Approximately ten seconds later, Howard is placed in handcuffs and escorted out of his cell. *Id.* at 00:02:06–00:02:16.

The remaining footage shows Howard receiving medical care. In Video 2, the nurse gives Howard multiple eye flushes and face wipe-downs. (Doc. 38-7, Video 2). The nurse also leaves a towel with Howard for any future wiping, if necessary. *Id*. Towards the end of the video, the nurse tells Howard to "keep blinking because that's really what is going to get it out." *Id.* at 00:04:30–00:04:34. On November 5, 2022, a medical chart note was entered for Howard, stating: "Code blue. Pt was decontaminated and eyes flushed following pepper spray. Medically cleared to remain in unit as authorities see fit." (Doc. 38-4 at 2).

## III. DISCUSSION

### A. Bruner's Motion for Summary Judgment[4]

In his Motion for Summary Judgment, Bruner argues: (1) the force used was objectively reasonable in light of the circumstances; (2) he is entitled to qualified immunity; (3) should the Court find liability, Howard suffered no physical injury and should be limited to nominal damages under the PLRA; and (4) there is no unconstitutional policy implemented by Defendant that violated Howard's rights and, thus, there is no basis for official-capacity liability. (Doc. 37 at 3–17). Howard responds that Bruner's actions violated Pulaski County policy, which allows the use of physical force only when absolutely necessary. (Doc. 41 at 3; Doc. 44 at 2, 4). Howard claims that he was not combative and posed no risk of harm to Bruner, and Bruner should have used alternative measures to deescalate the situation instead of using OC spray. (Doc. 44 at 2–4).

After careful consideration of the record, the Court recommends that Bruner's Motion for Summary Judgment be granted, and Howard's individual-capacity and official-capacity claims be dismissed, with prejudice. Below, the court discusses each claim in turn, beginning with the claim against Bruner in his individual capacity.

---

[4] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

### 1. Individual-Capacity Claim: Qualified Immunity

Although Bruner offers several arguments in favor of summary judgment, the Court will first analyze whether Bruner is entitled to qualified immunity. If Bruner is entitled to qualified immunity, summary judgment should be granted as a matter of law, and the Court will go no further. *See Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999) ("The issue of whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law.") (citation omitted).

To determine if Bruner is entitled to qualified immunity, the Court must conduct a two-prong inquiry into whether Howard has demonstrated: "(1) a deprivation of a constitutional right, [that was] (2) . . . clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). The Court may consider the prongs in either order, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and will first consider whether Howard suffered a constitutional deprivation.

When the conduct at issue occurred, Howard was in custody at PCRDF awaiting probation revocation proceedings.[5] (Doc. 38-2). Therefore, the Court evaluates his claims under the Eighth Amendment's prohibition against cruel and unusual punishment. *Peterson v. Heinen*, 89 F.4th 628, 634–35 (8th Cir. 2023). In determining whether Bruner's actions violated Howard's Eighth Amendment right to be free from excessive force, the core judicial inquiry is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*,

---

[5] Howard was also being held on charges of capital murder and possession of firearm by certain persons. (Doc. 38-2 at 2).

866 F.3d 969, 974 (8th Cir. 2017) (citations omitted). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, *i.e.*, they are using it maliciously and sadistically." *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) (citation omitted). Factors that inform this inquiry are: (1) "whether there was an objective need for force," (2) "the relationship between any such need and the amount of force used," (3) "the threat reasonably perceived by the correctional officers," (4) "any efforts by the officers to temper the severity of their forceful response," and (5) "the extent of the inmate's injury." *Ward*, 844 F.3d at 721–22 (citation omitted).

The Eighth Circuit has recognized that the limited use of chemical agents by a corrections officer to control a recalcitrant inmate constitutes a "tempered response" when compared to other forms of force. *Burns v. Eaton*, 752 F.3d 1136, 1139–40 (8th Cir. 2014) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)). In *Burns*, the Eighth Circuit found that the "few cases where [it] had denied summary judgment . . . based on pepper spraying" involved: (1) no warning that pepper spray would be used; (2) no apparent purpose other than inflicting pain; (3) use of unnecessary "super-soaker" quantities of spray; (4) refusal to allow the victim to wash off the painful chemical for days; and/or (5) the use of additional physical force. *Id.* (citing *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002); *Lawrence v. Bowersox*, 297 F.3d 727, 730, 732 (8th Cir. 2002)).

Directly applying the *Ward* Eighth Amendment factors in this case, the Court finds that Bruner is entitled to qualified immunity. *Ward*, 844 F.3d at 721. After Howard's

8

blatant threat—"don't try to get tough with me, bitch," followed by "what you trying to do?"—and continued non-compliance with direct orders, coupled with his raised hand, there was an objective need for the spray to maintain and restore discipline. (Doc. 38-7, Video 1 at 00:01:35–00:01:39); *Jackson*, 866 F.3d at 974. It was a small amount of spray, and no additional physical force was used. (Doc. 38-7, Video 1, at 00:01:46). And Howard's actions make the threat "reasonably perceived" by Bruner. Additionally, video footage shows the limited extent of Howard's injury and the medical response: Howard immediately received multiple eye flushes and face wipe downs, the nurse left Howard an extra towel, and medical staff counseled Howard to keep blinking so the spray would dissipate. (Doc. 38-7, Video 2).

Moreover, as noted above, in *Burns* and *Jones*, the Eighth Circuit held that the use of pepper spray constitutes a "tempered response" when compared to other forms of force.[6] And, when analyzing the "chemical agent facts" that may preclude summary judgment, as cited in *Burns*—whether there was a purpose for using the spray, the quantity of spray used, whether and when the inmate washed off the spray, and the use of physical force—the court finds that summary judgment is appropriate in this case. Here, Bruner had a reason to use the OC spray based on Howard's non-compliance with direct commands while using threatening language. Bruner's attempts to get Howard to sit on his bed and to deescalate the confrontation were unsuccessful. Bruner used a short burst of spray; Howard

---

[6] Additionally, considering the facts in the light most favorable to Howard, it appears that Bruner tried to temper the use of force prior to deploying the spray by asking Howard—multiple times—to "get on [his] rack."

immediately received medical care; and Bruner did not employ any other physical force during the interaction.

Additionally, this case is similar to *Jones*, where the Eighth Circuit held that an inmate did not establish an Eighth Amendment violation related to an officer's use of pepper spray. *Jones*, 207 F.3d at 494. In *Jones*, the Eighth Circuit found that a plaintiff failed to establish "malicious or sadistic" conduct when defendant sprayed capstun in the face of a large inmate who refused a work order and objected profanely when ordered to return to his barracks.[7] *Id.* at 497. In this case, just as in *Jones*, Howard became argumentative and refused to obey orders. And, while Howard was not out of his cell, Howard was certainly capable of posing a threat. In fact, after Bruner ordered him to sit on his rack, Howard asked Bruner, "the fuck [is] wrong with you, man?" And after Howard raised his hand above his waist, Bruner deployed the spray. In these circumstances, Bruner's use of chemical spray did not constitute excessive force.

Finally, the Court acknowledges that Bruner did not warn Howard prior to the application of the pepper spray. However, a failure to warn that force will be used, *standing alone*, generally does not preclude summary judgment in an officer's favor.[8] *Wright v. State*

---

[7] The Court notes that, in *Jones*, the record also included witness testimony that the inmate "charged" towards the officer. *Jones*, 207 F.3d at 493. In this case, Howard did not charge toward Bruner. Instead, Howard used threatening language and raised his hand above his waist after refusing to sit on his bed.

[8] Howard takes issue with the "point blank" use of pepper spray. (Doc. 3 at 4). However, Howard was demonstrating threatening behavior while in close proximity to Bruner inside a small cell while refusing direct orders to sit on his bed. Even still, Bruner took a step away from Howard before deploying the OC spray. (Doc. 38-7, Video 1, at 00:01:46). Also, Howard's cell mate was in the top bunk during the confrontation and spraying in Howard's direction prevented Howard's cell mate from being sprayed, as well. (Doc. 38-7, Video 1).

*of Arkansas*, No. 4:15-CV-452-BSM-BD, 2016 WL 3023845, at *3 (E.D. Ark. Apr. 26, 2016) (finding that an officer was entitled to qualified immunity, even where the officer sprayed chemical spray without warning), *report and recommendation adopted*, 2016 WL 3024081 (E.D. Ark. May 25, 2016). Instead, as the Court held in *Wright*:

> Generally, there must be other conduct. *See e.g.*, *Walker*, 526 at 1189 (holding officer not entitled to summary judgment when he failed to warn that he would use force, but also sprayed inmate with a super-soaker used for riot situations; soaked the entire cell and bedding with spray; and denied inmate shower and clean clothes or bedding for three days, resulting in injury); *Treats*, 308 F.3d at 871–73 (finding inmate refused to take a paper form he was not required to take; officer sprayed inmate with a prolonged burst of pepper spray without warning, then slammed inmate onto the floor); *Lawrence*, 297 F.3d at 730, 732 (finding that, without warning, officer doused two inmates with pepper spray from a MK-46, soaking their face, bodies, and entire cell with spray); *Foulk v. Charrier*, 262 F.3d 687, 692 (8th Cir. 2001) (finding over-medicated inmate in infirmary was awakened, ordered to stand spread-eagle, and sprayed with chemical agent without warning for refusing to eat; was sprayed a second time without warning, even though complying; then, not allowed to shower for days).

*Id.* In conclusion, considering the undisputed facts in this case, Howard has not demonstrated a deprivation of a constitutional right. Even viewing the evidence in the light most favorable to Howard, an unrestrained Howard threatened Bruner while Bruner stood in close proximity. Howard then disobeyed *four* direct orders to get on his rack, continued to argue and question Bruner, and immediately prior to Bruner's deployment of pepper spray, raised his arm above his waist. After Bruner sprayed Howard with a small burst of spray, Bruner called for help and cuffed Howard for transport. Officers immediately took Howard to receive medical care. And, while Howard claims he did not pose a threat, the video tells a different story: Howard's language and demeanor during his confrontation with Bruner could reasonably be perceived as threatening. *See Scott v. Harris*, 550 U.S.

11

372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Simply put, the force used by Bruner was not excessive under the Eighth Amendment. Notably, Howard does not argue that Bruner's actions were malicious or sadistic—only a violation of PCRDF policy. (Docs. 41, 44); *see also Jackson*, 866 F.3d at 975 ("If the evidence shows only 'a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives … the case should not go to the jury.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Because the Court finds that no constitutional violation occurred, Bruner is entitled to qualified immunity under the first prong of the analysis, and the Court need not address whether Bruner is entitled to qualified immunity under the second prong of the analysis. *Smith v. Lisenbe*, 73 F.4th 596, 601 (8th Cir. 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

### 2. Official-Capacity Claim

Howard also proceeds on an official-capacity claim against Bruner. (Doc. 18 at 2). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). Pulaski County can be held liable in this § 1983 action if a constitutional violation resulted from: (1) an official policy, (2) an unofficial practice/custom, or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City*

*of Independence, MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted). A municipality cannot be held liable unless there was an unconstitutional act by one of its employees. *Smith*, 73 F.4th at 601 (citing *Webb v. City of Maplewood*, 889 F.3d 483, 486–87 (8th Cir. 2018)).

Howard's official-capacity claim fails for at least two independent reasons. First, on this record, Howard cannot establish a constitutional violation. Second, assuming a constitutional violation did occur, Howard has not directed the Court to any Pulaski County custom, policy, or practice that *caused* the alleged violation. In his Complaint, Howard describes an isolated incident. Additionally, in his Responses to the Motion for Summary Judgment and Statement of Facts, Howard repeatedly argues that Bruner *did not* follow Pulaski County policies regarding force. (Doc. 41 at 3; Doc. 44 at 1, 4). *See Davis v. Pulaski Cnty. Arkansas*, No. 4:19-CV-643-LPR, 2021 WL 2875856, at *10 (E.D. Ark. July 8, 2021) (citing *Corwin*, 829 F.3d at 699–700) ("[T]he policy itself [] must be the animating force behind a constitutional violation. If a policy is not followed, the policy itself cannot be said to have brought about a constitutional violation. Moreover, not following a policy is not 'a policy' as the Eighth Circuit defines that term."). And Howard offers no argument regarding an unofficial custom or failure to train.[9] Accordingly, Bruner is entitled to summary judgment on Howard's official-capacity claim.

---

[9] In his Supplemental Response, Howard requests "all incident reports following/surrounding [Bruner's] use of OC spray[.]" This single request alone does not create a fact issue about unconstitutional customs at PCRDF.

13

### B. Howard's Motion for Declaratory and Injunctive Relief

On June 20, 2024, Howard filed an unsigned, one-page "Motion for Declaratory and Injunctive Relief." (Doc. 45). In the Motion, Howard states that Bruner "has a pattern of verbal brutality threats and harassment" and "has threatened [] Howard with physical violence" for filing grievances and using "the 1983 form." *Id.* The Motion should be denied.

First, if Bruner's Motion for Summary Judgment is granted, the Motion for Declaratory and Injunctive Relief is moot. Second, the Motion raises a new retaliation claim that is not related to the underlying excessive force claim.[10] *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").

## IV. CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Bruner's Motion for Summary Judgment (Doc. 36) be GRANTED.

---

[10] Howard does not state *when* the retaliation allegedly took place, but it appears to have occurred *after* he initiated the instant § 1983 action by "using the § 1983 form." (Doc. 45). Thus, there may also be an exhaustion issue at play. *See Frazier v. Kelley*, 460 F.Supp.3d 799, 830 (2020) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007) and *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)) ("On claims covered by the PLRA, prisoner plaintiffs are *required* to exhaust administrative remedies *before* seeking a preliminary injunction, just as they are required to do before seeking other remedies.") (emphasis added). If Howard wishes to seek relief for a *new* constitutional violation, he must do so by filing a separate § 1983 action *after* he exhausts his administrative remedies. 42 U.S.C. § 1997e(a); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

2.  Plaintiff Howard's Motion for Declaratory and Injunctive Relief (Doc. 45) be DENIED.

3.  Howard's Complaint (Doc. 3) and Amended Complaint (Doc. 11) be DISMISSED, with prejudice.

4.  Judgment be entered accordingly.

DATED this 18th day of July, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE