IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CODY S. HOWARD**                                                                                    **PLAINTIFF**
**#79081**

v.                                           No. 4:23-cv-00192-LPR

**BRUNER,** *Officer,*
***Pulaski County Jail***                                                                              **DEFENDANT**

## ORDER

The Court has reviewed the Recommended Disposition (RD) submitted by United States Magistrate Judge Benecia B. Moore (Doc. 52) and the Plaintiff's Objections (Doc. 53). After a *de novo* review of the RD, along with careful consideration of the Objections and the entire record, the Court hereby approves and adopts the RD in its entirety as this Court's findings and conclusions in all respects.[1]

---

[1] The RD is thorough, and I agree with it. But, to be as transparent as possible, I want to note that this case is not cut-and-dry; an appeal, if taken at the appropriate time, would warrant close scrutiny of the RD and this Order adopting the RD. For example, one thing not noted in the RD is that Officer Bruner can be said to have unnecessarily escalated the encounter with Mr. Howard when he entered Mr. Howard's cell and physically took the broom from him. *See* Doc. 38-7, Video 1 at 00:01:34–00:01:36. Taken aback, Mr. Howard responded, "don't try to get tough with me, bitch," and took off his face mask—actions seemingly intended to intimidate Officer Bruner, if not outright threaten his safety. *See id*. at 00:01:36–00:01:38. At that point, it was perfectly reasonable for Officer Bruner to respond by pulling out the OC spray in case he needed to use it. But it was *not* perfectly reasonable for Officer Bruner to step even closer to Mr. Howard, directly in his face. *See id*. at 00:01:39. (Moving into such close proximity with Mr. Howard might even suggest that Officer Bruner did not feel threatened at that point in the encounter.) In any event, at this point, Mr. Howard was basically pinned between his bed and Officer Bruner. Mr. Howard continued to stand stock-still for several seconds, giving Officer Bruner no additional reason to believe that Mr. Howard could potentially become violent. Officer Bruner could thus have easily de-escalated the situation at any moment *by simply taking a step back*. That he chose not to raises the specter that he was more interested in provoking Mr. Howard than in keeping the peace.

Officer Bruner then gave Mr. Howard four commands to sit down. A mere *four seconds* elapsed between Officer Bruner's first command and his fourth. *See id*. at 00:01:41–00:01:45. And Mr. Howard's responses to the commands—including "real shit[?]" and "what the fuck [is] wrong with you?"—suggest that Mr. Howard's four-second-long failure to comply was the result of bewilderment, rather than recalcitrance. *See id*. One second later—exactly five seconds after Officer Bruner issued his first command—Officer Bruner sprayed Mr. Howard's face with OC spray at point blank range without warning.

The Pulaski County Detention Center's use-of-force policy dictates that, when an officer is faced with an uncooperative inmate, he must first "warn the inmate of the consequences of non-cooperation" before a show of force to ensure that the inmate is "given every opportunity to cease [his] disruptive or assaultive activity and cooperate with the deputy[.]" Doc. 38-6 at 5–6. An exception exists for "emergency situations [when a deputy] will

Accordingly, Defendant Bruner's Motion for Summary Judgment (Doc. 36) is GRANTED.[2]  Judgment will be entered in favor of Defendant Bruner on the excessive-force claims made against him.  Plaintiff's Motion for Declaratory and Injunctive Relief (Doc. 45) and

---

not have a chance to go through the sequential alternatives, such as immediate attack upon himself/herself or a third person without warning." *Id*. at 5.  Officer Bruner does not directly attempt to justify his failure to warn in the summary-judgment briefing, but he does insinuate that the quick deployment of force was justified because Mr. Howard "was cursing at Defendant Bruner and quickly raised his fist in Defendant Bruner's direction."  Doc. 37 at 8.  Here, Officer Bruner is referring to Mr. Howard's response to Officer Bruner's final command, when Mr. Howard began saying, "hey, I can sue you [if] you spr--" while simultaneously raising his hand to shoulder-level for emphasis.  *See* Doc. 38-7, Video 1 at 00:01:46.  Officer Bruner's body cam footage shows that Mr. Howard's hand was close to his body, positioned in a relaxed half-fist with his index finger slightly pointed.  *Id*.  The movement was entirely consistent with the way Mr. Howard had moved his hands every time he spoke to Officer Bruner throughout the encounter.  And even Officer Bruner concedes that "the video may show in hindsight Plaintiff didn't intend to raise a fist towards Defendant to strike him . . . ."  Doc. 37 at 6.  But Officer Bruner nonetheless suggests his split-second decision was warranted.

Viewing the facts from this lens, the Court considers the relevant factors outlined in *Whitley v. Albers*, 475 U.S. 312 (1986), and *Hudson v. McMillian*, 503 U.S. 1 (1992).  First, was there an objective need for force?  The RD answers this question in the affirmative based on Mr. Howard's "blatant threat," "continued non-compliance," and "raised hand."  RD (Doc. 52) at 8–9.  This is likely right.  But it's not a slam dunk.  Had Officer Bruner stepped back, maybe he would have felt less threatened.  Had Officer Bruner warned Mr. Howard that further non-compliance would result in the use of force, maybe Mr. Howard would have complied.  Had Officer Bruner kept calm, stayed out of Mr. Howard's cell, and let him finish sweeping the cell, maybe the entire encounter could have been avoided.  Even if Officer Bruner believed the force he used was plausibly necessary at the moment the OC spray was deployed, is his prior escalation of the overall encounter relevant to this inquiry?

Second, what was the relationship between the need for force (not much, if any) and the amount of force used (a short burst of non-lethal OC spray)?  The answer is that the amount of force used was, at most, slightly excessive compared to the amount of force needed.  Third, what was the threat reasonably perceived by Officer Bruner?  It was a potential strike from Mr. Howard's hand from less than a foot away.  Fourth, what efforts (if any) did Officer Bruner make to temper the severity of his forceful response?  The RD concludes that Officer Bruner "tried to temper the use of force prior to deploying the spray" by issuing multiple commands to Mr. Howard to get on his bed.  RD (Doc. 52) at 9 n.6.  Perhaps.  But perhaps that is more of an attempt at obtaining compliance, as opposed to an attempt at tempering the severity of Officer Bruner's response.  Maybe the latter would have looked more like Officer Bruner "follow[ing] the [prison] regulation requiring him to warn [Mr. Howard] before spraying him with capstun, giving him another chance to comply."  *See Treats v. Morgan*, 308 F.3d 868, 874 (8th Cir. 2002).  Still, the RD is right that a short burst of non-lethal OC spray is itself a tempered response.  Fifth, what was the extent of Mr. Howard's injury?  The injury was minimal, Mr. Howard received prompt treatment, and he has no lasting injury from the encounter.

Officer Bruner's own confrontational behavior, coupled with his failure to provide any warning before deploying the OC spray (arguably in violation of the jail's use-of-force policy), hints that his use of the OC spray was retaliatory and at least somewhat malicious.  But that's more speculation than inference.  What this case really boils down to is "whether the use of force could *plausibly* have been thought necessary."  *Stewart v. Precythe*, 91 F.4th 944, 949 (8th Cir. 2024) (emphasis added) (quoting *Whitley*, 475 U.S. at 321).  And the evidence in this case, even when viewed in the light most favorable to Mr. Howard, cannot demonstrate to a reasonable jury that there was no plausible basis for Officer Bruner's belief that the force he used was necessary.  In other words, on this record, no reasonable juror could find that Officer Bruner's use of force was "completely unjustified."  *See Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016).  This is especially true given the Supreme Court's repeated instruction to lower courts to afford an appropriate amount of deference to officials tasked with the day-to-day management of prisons.  *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 482–83 (1995) (collecting cases).

[2] The Court is making technical edits to the RD concerning the disposition of this case.

Motion for Order (Doc. 54) are DENIED.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order or the accompanying Judgment would not be taken in good faith.

    IT IS SO ORDERED this 23rd day of August 2024.

                                                                     _____
                                                            LEE P. RUDOFSKY
                                                            UNITED STATES DISTRICT JUDGE